T.C. Memo. 2000-368

UNITED STATES TAX COURT

ESTATE OF FLOY M. CHRISTENSEN, DECEASED, CARL STEWART
CHRISTENSEN, PERSONAL REPRESENTATIVE, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 10793-99.                    Filed December 6, 2000.

<u>George W. Akers</u>, for petitioner.

<u>Julie L. Payne</u>, for respondent.

MEMORANDUM OPINION

CHIECHI, <u>Judge</u>:  Respondent determined a deficiency of
$108,633 in Federal estate tax (estate tax) with respect to the
estate (estate) of Floy M. Christensen (decedent).

The issues for decision are:

(1)  Is the aggregate amount of funds represented by certain
checks includible in decedent's gross estate?  We hold that it

is.

(2) Is certain property with respect to which decedent had a power of appointment at the time of her death includible in decedent's gross estate? We hold that it is.

## Background

This case was submitted fully stipulated. The facts that have been stipulated are so found.

At the time the petition was filed, Carl Stewart Christensen (Mr. Christensen), decedent's son and the personal representative of the estate, resided in Seattle, Washington.

On January 10, 1996, Floy M. Christensen, a resident of Kirkland, Washington, died testate at the age of 102. On February 25, 1982, Carl A. Christensen, decedent's spouse to whom she had been married for approximately 50 years, died testate. Pursuant to Carl A. Christensen's will, which he executed on August 26, 1980, a trust (trust) was created for the benefit of, inter alia, decedent. Pursuant to the terms of Carl A. Christensen's will creating that trust, decedent had the power to withdraw (power to withdraw) from the trust annually, by written request to the trustee, a share of the trust's principal in an amount not exceeding the greater of $5,000 or 5 percent of the value of such principal. Carl A. Christensen's will creating the trust contained no limitations or directions on the exercise of decedent's power to withdraw. When decedent died, she had not

exercised her power to withdraw for 1996. As of the date of decedent's death, the value of the trust equaled $1,535,950.58.

On August 15, 1984, decedent executed a durable power of attorney (decedent's power of attorney) by which she appointed Mr. Christensen and Louise M. Hastie (Ms. Hastie), her daughter, as her attorneys in fact. (For convenience, we shall sometimes refer to Mr. Christensen and Ms. Hastie as decedent's children.) Decedent's power of attorney provided in pertinent part:

> (1) <u>Powers</u>. The Attorneys in Fact, as fiducia-
> ries, shall have all the powers of absolute ownership
> and control of all assets and liabilities of the Prin-
> cipal, whether located within or without the State of
> Washington, the same as are possessed by the Principal,
> including, but not limited to, the power (i) to convey,
> transfer, encumber or otherwise deal in any way in
> connection with real property, securities and bank
> accounts owned by the Principal, and (ii) to do all
> acts granted trustees by the Washington Trust Act of
> 1959 and any amendments thereto (which powers are
> incorporated herein by this reference).
>
> (2) <u>Effectiveness and Duration</u>. This Power of
> Attorney shall become effective immediately and shall
> not be affected by the disability of the Principal.

Decedent's power of attorney did not specifically grant dece-dent's children the power to transfer decedent's property by gift.

On September 30, 1994, decedent moved into Cascade Vista Convalescent Center (Cascade Vista) located in Redmond, Washing-ton, where she remained until she died. Upon her admission to Cascade Vista, decedent was diagnosed with various ailments, including progressive dementia. From at least September 30,

1994, to the date of her death, decedent exhibited severely impaired cognitive skills, including poor short-term and long-term memory.

Since the mid-1980's until the date of her death, decedent maintained a joint bank account at Seafirst Bank (Seafirst joint account) with Mr. Christensen and Ms. Hastie. At all times, all of the funds deposited in the Seafirst joint account belonged to decedent.

During November 1995, approximately two months prior to decedent's death, Mr. Christensen or Ms. Hastie signed the following checks totaling $105,000 (November 1995 checks) drawn on the Seafirst joint account that were payable to the individuals indicated:

| Date of Check | Check No. | Amount | Payee | Relationship of Payee to Decedent |
|---|---|---|---|---|
| 11/5/95 | 1818 | $10,000 | Dee Hastie | Wife of grandson |
| 11/5/95 | 1819 | 5,000 | Steve Hewitt | Husband of great granddaughter |
| 11/5/95 | 1820 | 5,000 | Heather Hewitt | Great granddaughter |
| 11/5/95 | 1821 | 5,000 | Felicia Johnson | Great great grand-daughter |
| 11/5/95 | 1822 | 5,000 | Ann Johnson | Great granddaughter |
| 11/5/95 | 1823 | 10,000 | John Hanawalt | Husband of grand-daughter |
| 11/5/95 | 1824 | 5,000 | Calum Hanawalt | Great grandson |
| 11/5/95 | 1825 | 5,000 | Oona Hanawalt | Great granddaughter |
| 11/6/95 | 1351 | 5,000 | Ray Bracelin | Great grandson |
| 11/7/95 | 1353 | 10,000 | M.D. Lamont | Significant other of granddaughter |

| 11/7/95 | 1354 | 10,000 | Robert Malinof | Significant other of granddaughter |
| 11/8/95 | 1826 | 10,000 | Mel Hearn | Husband of grand- daughter |
| 11/8/95 | 1827 | 5,000 | Colin Hearn | Great grandson |
| 11/8/95 | 1828 | 5,000 | Clare Hearn | Great granddaughter |
| 11/8/95 | 1829 | 5,000 | Ariel Nilsen | Great granddaughter |
| 11/21/95 | 1357 | 5,000 | Sander Bracelin | Great grandson |

In early January 1996, prior to decedent's death on January 10, 1996, Mr. Christensen or Ms. Hastie signed the following checks totaling $100,000 (January 1996 checks) drawn on the Seafirst joint account that were payable to the individuals indicated:

| Date of Check | Check No. | Amount | Payee | Relationship of Payee to Decedent |
|---|---|---|---|---|
| 1/2/96 | 1360 | $10,000 | Louise Hastie | Daughter |
| 1/2/96 | 1361 | 10,000 | Colin Hastie | Grandson |
| 1/2/96 | 1830 | 10,000 | C.S. Christensen | Son |
| 1/2/96 | 1831 | 10,000 | Helen Christensen | Son's wife |
| 1/8/96 | 1833 | 10,000 | Lisa Hastie | Granddaughter |
| 1/8/96 | 1834 | 10,000 | Chris Hearn | Granddaughter |
| 1/8/96 | 1835 | 10,000 | Lael Hanawalt | Granddaughter |
| 1/9/96 | 1363 | 10,000 | Sandra Christensen | Granddaughter |
| 1/9/96 | 1364 | 10,000 | Karen Christensen | Granddaughter |
| 1/9/96 | 1832 | 10,000 | Toby Hastie | Grandson |

Check Nos. 1834 and 1835 did not clear Seafirst Bank until January 11, 1996, and check Nos. 1363 and 1364 did not clear Seafirst Bank until January 12, 1996.

In addition to the November 1995 checks and the January 1996

checks, other checks were written on the Seafirst joint account, including checks totaling $56,000, $15,000, and $41,700 that were signed around Christmas 1984, 1985, and 1989, respectively, by one of the joint account holders whose identity is not disclosed by the record. Moreover, during 1990 through February 11, 1995, one of the joint account holders of the Seafirst joint account whose identity is not disclosed by the record signed, inter alia, the following checks drawn on that account:

| Date of Check | Amount | Payee | Relationship of Payee to Decedent |
|---|---|---|---|
| 7/27/90 | $10,000 | Colin[1] | |
| 7/27/90 | 10,000 | ?[2] | |
| 7/27/90 | 10,000 | ? | |
| 7/27/90 | 10,000 | ? | |
| 11/9/90 | 10,000 | Toby Hastie | Grandson |
| 11/9/90 | 10,000 | Chris Hearn | Granddaughter |
| 11/9/90 | 10,000 | Lael Hanawalt | Granddaughter |
| 11/9/90 | 10,000 | Lisa Hastie | Granddaughter |
| 4/11/91 | 10,000 | ? | |
| 4/11/91 | 10,000 | ? | |
| 4/12/91 | 10,000 | Colin | |
| 4/12/91 | 10,000 | ? | |
| 11/17/91 | 10,000 | Dee Hastie | Wife of grandson |
| 11/17/91 | 10,000 | Chris Hearn | Granddaughter |
| 11/17/91 | 10,000 | Lael Hanawalt | Granddaughter |
| 11/17/91 | 10,000 | Lisa Hastie | Granddaughter |
| 11/21/91 | 10,000 | Sandra Christensen | Granddaughter |

| | | | |
|---|---|---|---|
| 12/5/91 | 10,000 | ? | |
| 1/8/92 | 10,000 | ? | |
| 1/8/92 | 10,000 | Colin | |
| 1/9/92 | 10,000 | ? | |
| 1/9/92 | 10,000 | ? | |
| 12/2/92 | 10,000 | Lael Hanawalt | Granddaughter |
| 12/2/92 | 10,000 | ? | |
| 12/2/92 | 10,000 | Lisa Hastie | Granddaughter |
| 12/2/92 | 10,000 | Chris Hearn | Granddaughter |
| 12/6/92 | 10,000 | Sandra Christensen | Granddaughter |
| 12/6/92 | 10,000 | ? | |
| 1/12/92 | 10,000 | ? | |
| 1/12/92 | 10,000 | ? | |
| 1/13/93 | 10,000 | ? | |
| 1/13/93 | 10,000 | Colin | |
| 10/13/93 | 10,000 | ? | |
| 10/13/93 | 10,000 | Sandra Christensen | Granddaughter |
| 10/13/93 | 7,000 | Ray Bracelin | Great grandson |
| 10/13/93 | 7,000 | Sander Bracelin | Great grandson |
| 10/13/93 | 10,000 | Toby Hastie | Grandson |
| 10/13/93 | 7,000 | Heather Hewitt | Great granddaughter |
| 10/13/93 | 7,000 | Ann Johnson | Great granddaughter |
| 10/13/93 | 7,000 | Felicia Johnson | Great great grand-daughter |
| 10/13/93 | 10,000 | Lael Hanawalt | Granddaughter |
| 10/13/93 | 7,000 | Ariel Nilsen | Great granddaughter |
| 10/13/93 | 7,000 | Oona Hanawalt | Great granddaughter |
| 10/13/93 | 7,000 | Calum Hanawalt | Great grandson |

| Date | Amount | Payee | Relationship |
|---|---|---|---|
| 10/13/93 | 10,000 | Chris Hearn | Granddaughter |
| 10/13/93 | 7,000 | Clare Hearn | Great granddaughter |
| 10/13/93 | 10,000 | Lisa Hastie | Granddaughter |
| 1/3/94 | 10,000 | ? | |
| 1/3/94 | 10,000 | ? | |
| 1/3/94 | 10,000 | ? | |
| 1/3/94 | 10,000 | ? | |
| 1/21/94 | 10,000 | ? | |
| 1/21/94 | 10,000 | ? | |
| 1/24/94 | 10,000 | Chris Hearn | Granddaughter |
| 1/24/94 | 10,000 | Lael Hanawalt | Granddaughter |
| 1/24/94 | 10,000 | Dee Hastie | Wife of grandson |
| 1/24/94 | 10,000 | Lisa Hastie | Granddaughter |
| 1/2/95 | 10,000 | ? | |
| 1/2/95 | 10,000 | ? | |
| 1/3/95 | 10,000 | ? | |
| 1/3/95 | 10,000 | Colin | |
| 2/10/95 | 10,000 | Lael Hanawalt | Granddaughter |
| 2/10/95 | 10,000 | Chris Hearn | Granddaughter |
| 2/10/95 | 10,000 | ? | |
| 2/10/95 | 10,000 | Lisa Hastie | Granddaughter |
| 2/11/95 | 10,000 | ? | |
| 2/11/95 | 10,000 | ? | |

[1]Where the payee is shown in the chart as Colin, we have not been able to determine from the record before us whether the payee was Colin Hastie or Colin Hearn.

[2]Where there are question marks under the column headed "Payee", we have not been able to determine from the record before us the names of the payees of the checks shown in the chart.

Mr. Christensen, as the personal representative of the

estate, filed Form 706, United States Estate (and Generation-Skipping Transfer) Tax Return (estate tax return), which showed estate tax due of $14,573. The estate tax return reported that decedent's total gross estate equaled $721,834. Included in decedent's total gross estate reported in the estate tax return was the value of the Seafirst joint account as of the date of decedent's death, which the personal representative reported in Schedule E, Jointly Owned Property, of that return (Schedule E) as $64,676.[1] The value of the Seafirst joint account reported in Schedule E and included in decedent's total gross estate did not include the aggregate amount of funds represented by the November 1995 checks and the January 1996 checks (i.e., $205,000). The estate tax return did not include as part of decedent's total gross estate any amount with respect to decedent's power to withdraw.

Respondent issued a notice of deficiency (notice) with respect to the estate tax return. In the notice, respondent determined that the aggregate amount of funds represented by the November 1995 checks and the January 1996 checks should have been reported in Schedule E. Consequently, respondent increased decedent's total gross estate and taxable estate by that amount (i.e., $205,000). Respondent also determined in the notice that

---

[1]The value of the Seafirst joint account reported in Schedule E included $140 of interest that had accrued on that account through the date of decedent's death.

decedent's power to withdraw, which had not lapsed as of the date of decedent's death, was a general power of appointment that should have been reported in Schedule H, Powers of Appointment, of the estate tax return (Schedule H). Consequently, respondent increased decedent's total gross estate and taxable estate by $76,797, which is 5 percent times the value ($1,535,950.58) of the trust as of the date of decedent's death.

## Discussion

The estate bears the burden of proving that the determinations in the notice are erroneous. See Rule 142(a);[2] Welch v. Helvering, 290 U.S. 111, 115 (1933). That this case was submitted fully stipulated does not change that burden or the effect of a failure of proof. See Rule 122(b); Borchers v. Commissioner, 95 T.C. 82, 91 (1990), affd. 943 F.2d 22 (8th Cir. 1991).

November 1995 Checks and January 1996 Checks

The parties' dispute with respect to the November 1995 checks and the January 1996 checks is whether the transfers of funds represented by those checks constitute nontaxable gifts made by decedent. If they do not, the parties agree that the amounts of funds withdrawn by those checks from the Seafirst joint account are includible in decedent's gross estate.

---

[2]All Rule references are to the Tax Court Rules of Practice and Procedure. Unless otherwise indicated, all section references are to the Internal Revenue Code in effect on the date of decedent's death.

According to the estate, the transfers of funds represented by the November 1995 checks and the January 1996 checks constitute gifts made by decedent because those checks were "authorized and proper disbursements" under the laws of the State of Washington. In support of its position that the checks in question were authorized and proper disbursements under the laws of the State of Washington, the estate asserts:

> Washington State law, RCW 30.22.050, provides for various types of bank accounts, one of which is a joint account. RCW 30.22.090(2) provides that funds in a joint account belong to the person depositing the funds. Finally, RCW 30.22.040(11) and (14) and RCW 30.22.140 provide that any individual who has the current right to payment of funds pursuant to the account agreement may issue checks on the account which the financial institution is authorized to honor. * * *

Respondent counters the estate's position as follows:

> Respondent agrees with Petitioner that Floy Christensen's children were authorized by statute to write checks on the joint account. Petitioner accurately states that Wash. Rev. Code § 30.22.050 provides for the creation of joint bank accounts and Wash. Rev. Code § 30.22.090 provides that funds in a joint account belong to the person depositing the funds. Petitioner also argues under Wash. Rev. Code § 30.22.140 that any individual who has the current right to payment of funds pursuant to the account agreement may issue checks on the account which the financial institution is authorized to honor. Petitioner misconstrues this statute.

> Wash. Rev. Code § 30.22.140 is a provision for the protection of financial institutions when they pay a depositor named on a joint account who may not be the actual owner of the funds paid. Clearly, a depositor named on a joint account may withdraw all of the funds in an account. This ability does not, however, translate into ownership of the funds that are held in the joint account. Rather, Wash. Rev. Code § 30.22.090

sets forth the joint account holders' respective owner-
ship rights to the funds deposited in the account.
Consistent with this statute, and as stipulated in this
case, Floy Christensen was at all times the owner of
all of the funds in the joint account.

Wash. Rev. Code § 30.22.130 preserves Floy
Christensen's ownership rights to the funds in the
joint account, notwithstanding that a financial insti-
tution properly made payment of the funds to her chil-
dren as joint account holders. * * *

We find the estate's reliance on certain statutory provi-

sions of the laws of the State of Washington to support its

position that the transfers of funds represented by the November

1995 checks and the January 1996 checks constitute gifts made by

decedent to be misplaced. None of those provisions, which are

part of the Financial Institution Individual Account Deposit Act

(Act), see Wash. Rev. Code Ann. ch. 30.22 (West 1986),[3] grants

authority to a person named on a joint bank account who does not

own the funds in such an account to make a gift of all or a

portion of those funds on behalf of the actual owner of those

funds.

As the estate accurately indicates, Wash. Rev. Code Ann.

sec. 30.22.050 (West 1986) provides for the creation of joint

bank accounts, and Wash. Rev. Code Ann. sec. 30.22.090(2) (West

1986) provides that funds on deposit in a joint account belong to

_____

[3]All references to the Revised Code of Washington Annotated
are to that Code in effect on the date of decedent's death and on
the various dates on which the November 1995 checks and the
January 1996 checks were written and subsequently paid by
Seafirst Bank.

the depositors in proportion to the net funds owned by each depositor (unless the contract of deposit provides otherwise or there is clear and convincing evidence of a contrary intent at the time the account was created). In the instant case, the parties stipulated that at all times decedent owned all of the funds deposited in the Seafirst joint account. The estate also accurately indicates that Wash. Rev. Code Ann. sec. 30.22.140 (West 1986) (RCWA 30.22.140) permits a financial institution to make payments of funds on deposit in an account having two or more depositors to or for any one or more of the depositors named on the account without regard to the actual ownership of the funds by or between the depositors.

Moreover, Wash. Rev. Code Ann. sec. 30.22.120 (West 1986) (RCWA 30.22.120) permits a financial institution, in making payments of funds deposited in an account, to rely conclusively and entirely upon the form of the account and the terms of the contract of deposit at the time the payments are made. RCWA 30.22.120 does not require a financial institution to inquire as to (1) either the source or the ownership of any funds received for deposit to an account or (2) the proposed application of any payments made from an account. Unless a financial institution has actual knowledge of the existence of a dispute between depositors, beneficiaries, or other persons claiming an interest in funds deposited in an account, pursuant to RCWA 30.22.120, a

payment that is made in accordance with various sections of the Act by a financial institution from an account at the request of any depositor to the account and/or the agent of any depositor to the account is to constitute a complete release and discharge of the financial institution from all claims for the amount so paid regardless of whether or not the payment is consistent with the actual ownership of the funds deposited in an account by a depositor and/or the actual ownership of the funds as between depositors and/or their heirs, successors, personal representatives, and assigns. RCWA 30.22.120 thus permits a financial institution to assume that each of the persons listed on a joint account has authority over all of the funds on deposit in such an account unless the financial institution specifically knows of a dispute regarding the funds.

Neither RCWA 30.22.120 nor RCWA 30.22.140 on which the estate relies authorizes a joint account holder who is not the actual owner of the funds in a joint account to withdraw funds from the account. If funds on deposit in a joint account are paid to or for a joint account holder who does not own the funds and who is not authorized by the owner of the funds to withdraw such funds for that purpose, the proper remedy is for the actual owner to sue the joint account holder. See Kalk v. Security Pac. Bank Wash. N.A., 866 P.2d 1276, 1278 (Wash. Ct. App. 1994), revd. on other grounds 894 P.2d 559 (Wash. 1995). Such a right is

preserved by Wash. Rev. Code Ann. sec. 30.22.130 (West 1986) (RCWA 30.22.130).  See id.

RCWA 30.22.130 provides:

30.22.130.  Rights as between individuals preserved

The protection accorded to financial institutions under * * * [the Act] shall have no bearing on the actual rights of ownership to deposited funds by a depositor, and/or between depositors * * * and their heirs, successors, personal representatives, and assigns.

The protections accorded to financial institutions by RCWA 30.22.120, RCWA 30.22.140, and other sections of the Act when they make payments of funds on deposit to a person named on a bank account were not intended to and, as RCWA 30.22.130 expressly provides, do not threaten or eviscerate the ownership rights of depositors.  See Kalk v. Security Pac. Bank Wash. N.A., 894 P.2d 559, 561 (Wash. 1995).  As noted by the Supreme Court of Washington, the legislative history of the Act indicates that RCWA 30.22.130, which preserves the ownership rights of individual depositors, is the converse of RCWA 30.22.120, which protects financial institutions.  See Kalk v. Security Pac. Bank Wash. N.A., supra at 561 n.4.

Although the estate acknowledges that RCWA 30.22.130 preserves certain rights of ownership to deposited funds, it contends that RCWA 30.22.130 did not preserve the ownership rights of decedent to the amounts of funds withdrawn from the Seafirst joint account by the November 1995 checks and the January 1996

checks. That is because, according to the estate, none of the payees of any of those checks was a depositor referred to in RCWA 30.22.130 within the meaning of Wash. Rev. Code Ann. sec. 30.22.040(11) (West 1986) (RCWA 30.22.040(11)). In support of that position, the estate asserts:

> Depositors are defined in RCW 30.22.040(11) to include Floy Christensen, both as the owner of the funds on deposit and as a person authorized to sign on the joint account, as well as her two children as people authorized to sign on the joint account. The recipients of the Gift Checks, as payees of the Gift Checks, are not within the definition of depositor for the issues presented in this case.

We reject the estate's position. That position misconstrues RCWA 30.22.130 and disregards the definition of the term "depositor" in RCWA 30.22.040(11) that is to apply for purposes of RCWA 30.22.130. RCWA 30.22.040(11) sets forth the following two distinct definitions of the term "depositor":

30.22.040. Definitions

> (11) "Depositor", when utilized in determining the rights of individuals to funds in an account, means an individual who owns the funds. When utilized in determining the rights of a financial institution to make or withhold payment, and/or to take any other action with regard to funds held under a contract of deposit, "depositor" means the individual or individuals who have the current right to payment of funds held under the contract of deposit without regard to the actual rights of ownership thereof by these individuals. * * *

In order to determine which of the foregoing two definitions of the term "depositor" applies for purposes of RCWA 30.22.130, it is necessary to determine whether the term "depositor" is used

in RCWA 30.22.130 in order to determine the rights of individuals to funds in an account or in order to determine the rights of a financial institution to make or withhold payment and/or to take any other action with regard to funds held under a contract of deposit. We conclude that the term "depositor" is utilized in RCWA 30.22.130 in order to determine the rights of individuals to funds in an account and is not utilized in that section in order to determine the rights of a financial institution to make or withhold payment and/or to take any other action with regard to funds held under a contract of deposit. We further conclude that the definition of the term "depositor" that appears in RCWA 30.22.130 is an individual who owns the funds in an account. See RCWA 30.22.040(11).

At all times, the only individual who owned the funds in the Seafirst joint account was decedent. RCWA 30.22.130 preserved her ownership rights to the funds deposited in that account. Unless decedent authorized Mr. Christensen and Ms. Hastie to make gifts on behalf of decedent of certain funds in the Seafirst joint account by issuing the November 1995 checks and the January 1996 checks to the payees indicated on those checks, when Seafirst Bank paid those checks, decedent, as the owner of the funds so paid, had the right to sue the joint account holders, Mr. Christensen and Ms. Hastie, in order to recover those funds. See RCWA 30.22.130; see also Kalk v. Security Pac. Bank Wash. N.A., 866 P.2d at 1279.

In further support of its position that RCWA 30.22.130 does not apply to the November 1995 checks and the January 1996 checks, the estate contends that

> the term deposited funds as used in RCW 30.22.130 is defined in RCW 30.22.040(13) to be the funds on deposit with the financial institution less any withdrawals. Thus, Respondent's reliance upon RCW 30.22.130 is inappropriate since it only preserves rights as between Floy Christensen and her children as to the ownership of the deposited funds, which by definition are those funds remaining in the account and would, therefore, exclude funds which had been withdrawn from the joint account by the Gift Checks.

We reject the estate's contention that the term "deposited funds" in RCWA 30.22.130 does not include funds withdrawn from the Seafirst joint account by the November 1995 checks and the January 1996 checks.  The term "deposited funds" that appears in RCWA 30.22.130 is not defined, as the estate asserts, in Wash. Rev. Code Ann. sec. 30.22.040(13) (West 1986) (RCWA 30.22.040(13)).  Instead, RCWA 30.22.040(13) defines the terms "'Depositor's funds' or 'funds of a depositor'".

Although not defined in the Act, we conclude that the term "deposited funds" that appears in RCWA 30.22.130 is not susceptible to more than one reasonable interpretation.  See State of Wash. v. Azpitarte, 995 P.2d 31, 33 (Wash. 2000).  The only reasonable interpretation of the term "deposited funds" in RCWA 30.22.130 is funds on deposit with (i.e., placed in) a financial

institution.[4]

We conclude that the protections accorded to Seafirst Bank under the Act with respect to the withdrawals represented by the November 1995 checks and the January 1996 checks that were signed by either Mr. Christensen or Ms. Hastie as a joint account holder of the Seafirst joint account had no bearing on the actual rights

---

[4]Assuming arguendo that we were to have concluded that the meaning of the term "deposited funds" in Wash. Rev. Code Ann. sec. 30.22.130 (West 1986) (RCWA 30.22.130) is the same as the meaning of the terms "'Depositor's funds' or 'funds of a depositor'" in Wash. Rev. Code Ann. sec. 30.22.040(13) (West 1986) (RCWA 30.22.040(13)), we nonetheless reject the position of the estate that RCWA 30.22.130 "preserves rights as between Floy Christensen and her children as to the ownership of the deposited funds, which by definition are those funds remaining in the [Seafirst joint] account and would * * * exclude funds which had been withdrawn from the joint account by the Gift Checks". RCWA 30.22.040(13) defines the terms "'Depositor's funds' or 'funds of a depositor'" as follows:

30.22.040. Definitions

(13) "Depositor's funds" or "funds of a depositor" means the amount of all deposits belonging to or made for the benefit of a depositor, less all withdrawals of the funds by the depositor or by others for the depositor's benefit, plus the depositor's prorated share of any interest or dividends included in the current balance of the account and any proceeds of deposit life insurance added to the account by reason of the death of a depositor.

Contrary to the estate's contention, the definition of the terms "'Depositor's funds' or 'funds of a depositor'" does not exclude all funds that would have been withdrawn from an account in a financial institution. The definition of those terms excludes only those withdrawals "by the depositor or by others for the depositor's benefit". RCWA 30.22.040(13). None of the November 1995 checks and the January 1996 checks represented a withdrawal of decedent's funds in the Seafirst joint account "by the depositor [decedent] or by others for the depositor's [decedent's] benefit". RCWA 30.22.040(13).

of ownership by decedent to the deposited funds in that joint account. See RCWA 30.22.130.

Unless decedent granted Mr. Christensen and Ms. Hastie the authority to make gifts on her behalf of the funds withdrawn from the Seafirst joint account by the November 1995 checks and the January 1996 checks, both Mr. Christensen and Ms. Hastie had an obligation to account to decedent for the funds withdrawn by the respective checks that they signed, and decedent could have sued both of them to recover those funds. See RCWA 30.22.130; see also Kalk v. Security Pac. Bank Wash. N.A., 866 P.2d at 1279. On the record before us, we find that the estate has failed to show that decedent authorized either Mr. Christensen or Ms. Hastie to make gifts on her behalf of the funds in the Seafirst joint account that were withdrawn by the November 1995 checks and the January 1996 checks. Indeed, the estate does not even suggest that any such authority existed outside the purported authority that it claims was granted to them as joint account holders of the Seafirst joint account by certain sections of the Act. In this connection, the estate expressly disavows relying on the power of attorney that decedent signed on August 15, 1984, in order to establish that decedent authorized Mr. Christensen and Ms. Hastie to make gifts on her behalf. We conclude that the estate acknowledges that that power of attorney did not authorize Mr. Christensen and Ms. Hastie to make gifts on behalf of dece-

dent.[5]

In further support of its position that the transfers of funds represented by the November 1995 checks and the January 1996 checks constitute nontaxable gifts made by decedent, the estate argues:

> Regulation § 25.2511-1(g)(1) makes it abundantly clear that Floy Christensen did not have to possess donative intent at the time of the Gift Checks to have made a gift. Instead, the Regulation applies an objective facts and circumstances test. The Regulation eliminates any doubt as to that test in this fact pattern through an example found in the Regulations, § 25.2511-1(h)(4), which example deals with a joint bank account and gifts made from that account.

According to the estate, the example found in sec. 25.2511-1(h)(4), Gift Tax Regs., "impliedly recognizes" that, regardless of donative intent on the part of the transferor, checks properly drawn on a joint account to others constitute gifts. The estate points to sec. 25.2511-1(c)(1), Gift Tax Regs., in further

---

[5]We agree with the estate's acknowledgment regarding decedent's power of attorney. Section 11.94.050(1) of the Revised Code of Washington Annotated (West 1998) (RCWA 11.94.050(1)) provides that an attorney in fact does not have the power, unless specifically otherwise provided in the power of attorney, to make any gifts of property owned by the principal. Decedent's power of attorney authorizing Mr. Christensen and Ms. Hastie to act as her attorneys in fact does not specifically provide that those individuals were authorized to make gifts of property owned by decedent. We conclude that decedent's power of attorney did not authorize Mr. Christensen and Ms. Hastie to make gifts on her behalf. Where, as here, a power of attorney is silent with respect to any authority to make gifts of the principal's property, the agent may not read such authority into the instrument. See RCWA 11.94.050(1).

support of that contention.[6]

Respondent counters the estate's position as follows:

The bare fact that Floy Christensen's children

_____

[6]The estate also argues that, even if it were necessary to show decedent's donative intent as a prerequisite to finding that the transfers of funds withdrawn by the November 1995 checks and the January 1996 checks constitute nontaxable gifts,

the only evidence bearing upon Floy Christensen's intent is the declaration of Stewart Christensen * * *. In particular, paragraphs 4, 5 and 9 of Stewart Christensen's declaration clearly state that Floy Christensen and her husband embarked upon a lifetime gifting program, which program Floy Christensen continued upon the death of her husband. In later years, this gifting program was carried out by Floy Christensen's son and daughter on her behalf, with her concurrence, and in keeping with the long-established gifting program.

We are not required to, and we shall not, rely on the uncorroborated affidavit of Mr. Christensen. There is no reliable evidence in the record establishing to our satisfaction either a lifetime gifting program by decedent and her husband or decedent's continuation of that alleged program after the death of her husband. Although the record does contain a handwritten summary prepared by Mr. Christensen which summarized certain checks written on the Seafirst joint account during 1984, 1985, and 1989 through Jan. 9, 1996, that summary is conclusory, and we do not find it persuasive.

Assuming arguendo that we were to have found that a lifetime gifting program had been carried out by decedent and her husband and by decedent alone after her husband's death, the record belies the allegation of Mr. Christensen in his affidavit that the issuance by him or Ms. Hastie of the November 1995 checks and the January 1996 checks was done with the concurrence of decedent. We have found that from at least Sept. 30, 1994, to the date of her death, decedent suffered from progressive dementia and exhibited severely impaired cognitive skills, including poor short-term and long-term memory. On the record before us, we find that the estate has failed to show that decedent possessed the requisite mental ability to have concurred in the making of any alleged gifts by the issuance of the November 1995 checks and the January 1996 checks.

could write checks on the joint account does not characterize all of those checks as gifts from Floy Christensen as Petitioner argues. Petitioner cites to Treas. Reg. §§ 25.2511-1(h)(4) and 25.2511-1(c)(1) for support of its argument. Treas. Reg. § 25.2511-1(c)(1) provides that gift tax applies to gifts indirectly made; it does not, however, establish the recipient of a particular gift. In the context of this case, Treas. Reg. § 25.2511-1(c)(1) does not establish that the payees shown on the checks in issue were the recipients of gifts from Floy Christensen. Additionally, Treas. Reg. § 25.2511-1(h)(4) provides that if Floy Christensen created the joint account for herself and her children, there is a gift to her children when they draw upon the account for their own benefit to the extent they have no obligation to account to Floy Christensen for the amount withdrawn.

The regulation Petitioner relies on is inapplicable to this case. Petitioner's argument fails because, under Washington State law, Floy Christensen's children had an obligation to account to her for amounts they withdrew from the joint account. In determining whether a person with access to a joint account created by another has an obligation to account to the depositor, courts have looked to whether the depositor had given up dominion and control over the deposited funds. See, e.g., Haneke v. United States, 548 F.2d 1138 (4th Cir. 1977). Floy Christensen did not give up dominion and control over the funds in the joint account. In fact, Petitioner stipulated to the fact that at all times all of the funds in the joint account belonged to Floy Christensen. Because all of the funds in the joint account belonged to her, she had the right to challenge any of the withdrawals made by her children. Wash. Rev. Code § 30.22.130. [Fn. ref. omitted.]

We find the estate's reliance on sec. 25.2511-1(c)(1), (g)(1), and (h)(4), Gift Tax Regs., to be misplaced. We have concluded that Mr. Christensen and Ms. Hastie had an obligation to account to decedent for the amounts of funds withdrawn by the respective checks in question that they signed and that decedent had the right to sue them for recovery of those funds, which was

preserved by RCWA 33.22.130. On the record before us, we reject the position of the estate that the gift tax regulations on which the estate relies establish that the payees shown on the November 1995 checks and the January 1996 checks were the recipients of gifts from decedent.

Based on our examination of the entire record before us, we find that the estate has failed to show that decedent (or a legally appointed representative acting on behalf of decedent) could not have revoked the transfers of funds that decedent's children made by the issuance of the November 1995 checks and the January 1996 checks.[7] We further find on that record that the

---

[7]Respondent argues in the alternative that, assuming arguendo the Court were to find that decedent authorized Mr. Christensen and Ms. Hastie to make gifts of the amounts of funds withdrawn by the November 1995 checks and the January 1996 checks, four of those checks (i.e., check Nos. 1363, 1364, 1834, and 1835) were not cashed prior to decedent's death. Consequently, according to respondent, those four checks did not result in completed transfers as of the date of decedent's death and are includible in decedent's gross estate. We agree. See Estate of Gagliardi v. Commissioner, 89 T.C. 1207, 1211-1213 (1987).

A gift is not consummated until it is placed beyond the donor's recall. See sec. 25.2511-2(b), Gift Tax Regs. State law determines whether decedent parted with dominion and control over the funds in the Seafirst joint account that were withdrawn by the November 1995 checks and the January 1996 checks. See Estate of Dillingham v. Commissioner, 88 T.C. 1569, 1575 (1987), affd. 903 F.2d 760 (10th Cir. 1990). Under the law of the State of Washington, where a donor uses a check to make a gift, the donor does not immediately relinquish control over the funds represented by the checks. See Wash. Rev. Code Ann. sec. 62A.3-408 (West 1995). Delivery of the check will not perfect a monetary gift because the donor may stop payment or withdraw all the funds in the bank account, thereby effectively revoking the gift. See

(continued...)

estate has failed to show that the transfers of those funds constitute nontaxable gifts. The parties agree that if the Court were to find that the transfers of funds represented by the November 1995 checks and the January 1996 checks do not constitute nontaxable gifts, the determination in the notice with respect to those funds should be sustained. Consequently, we sustain that determination.

Decedent's Power To Withdraw

The estate concedes that, unless one of the exceptions in section 2041(b)(1)(A), (B), or (C) applies to decedent's power to withdraw, that power constitutes a general power of appointment as defined in section 2041(b)(1), and 5 percent of the value of the property with respect to which decedent held that power for 1996 is includible in decedent's gross estate. The estate contends, however, that the exception in section 2041(b)(1)(A)[8] applies to decedent's power to withdraw. According to the

---

[7](...continued)
Wash. Rev. Code Ann. sec. 62A.4-403 (West 1995). Check Nos. 1363, 1364, 1834, and 1835 did not clear Seafirst Bank until after the date of decedent's death. As of the date of her death, decedent had not relinquished control over the funds represented by those four checks, and delivery of those four checks did not perfect monetary gifts to the payees indicated on those checks. See Wash. Rev. Code Ann. secs. 62A.3-408 and 62A.4-403 (West 1995).

[8]Section 2041(b)(1)(A) excepts from the definition of a general power of appointment "A power to consume, invade, or appropriate property for the benefit of the decedent which is limited by an ascertainable standard relating to the health, education, support, or maintenance of the decedent".

estate, Wash. Rev. Code Ann. sec. 11.95.100 (West 1998) (RCWA 11.95.100)[9] imposed on decedent's power to withdraw an ascertainable standard relating to the health, education, support, or maintenance of decedent within the meaning of section 2041(b)(1)(A). Consequently, the estate maintains, decedent's power to withdraw does not constitute a general power of appointment.

Respondent counters that RCWA 11.95.100 did not apply to decedent's power to withdraw. In support of that position, respondent relies on Wash. Rev. Code Ann. sec. 11.95.140 (West Supp. 1996) (RCWA 11.95.140).

RCWA 11.95.140, which prescribed rules as to the applicability of RCWA 11.95.100 (and Wash. Rev. Code Ann. sec. 11.95.110 (West 1998)), provided in pertinent part as follows:

11.95.140. Exercise of power in favor of holder--
Applicability

---

[9]RCWA 11.95.100 provided:

11.95.100. Exercise of power in favor of holder--
Limitations

If the standard governing the exercise of a lifetime or a testamentary power of appointment does not clearly indicate that a broader or more restrictive power of appointment is intended, the holder of the power of appointment may exercise it in his or her favor only for his or her health, education, support, or maintenance as described in section 2041 or 2514 of the Internal Revenue Code and the applicable regulations adopted under the section.

(1)(a)  RCW 11.95.100 and 11.95.110 respectively apply to a power of appointment created under a will, codicil, trust agreement, or declaration of trust, deed, power of attorney, or other instrument executed after July 25, 1993, unless the terms of the instrument refer specifically to RCW 11.95.100 or 11.95.110 respectively and provide expressly to the contrary.

(b)  Notwithstanding (a) of this subsection, for the purposes of this section a codicil to a will, an amendment to a trust, or an amendment to another instrument that created the power of appointment in question shall not be deemed to cause that instrument to be executed after July 25, 1993, unless the codicil, amendment, or other instrument clearly shows an intent to have RCW 11.95.100 or 11.95.110 apply.

(2)  Notwithstanding subsection (1) of this section, RCW 11.95.100 through 11.95.150 shall apply to a power of appointment created under a will, codicil, trust agreement, or declaration of trust, deed, power of attorney, or other instrument executed prior to July 25, 1993, if the person who created the power of appointment had on July 25, 1993, the power to revoke, amend, or modify the instrument creating the power of appointment, unless:

(a)  The terms of the instrument specifically refer to RCW 11.95.100 or 11.95.110 respectively and provide expressly to the contrary; or

(b)  The person creating the power of appointment was not competent, on July 25, 1993, to revoke, amend, or modify the instrument creating the power of appointment and did not regain his or her competence to revoke, amend, or modify the instrument creating the power of appointment on or before his or her death or before the time at which the instrument could no longer be revoked, amended, or modified by the person.

At the time it enacted RCWA 11.95.100, which was effective as of July 25, 1993, the legislature of the State of Washington decided that that section was to apply to any power of appointment created under an instrument executed after that effective date.  See RCWA 11.95.140(1).  The legislature of the State of

Washington further decided when it enacted RCWA 11.95.100 that RCWA 11.95.100 also was to apply to any power of appointment created under an instrument executed prior to July 25, 1993, if the person who created such a power had on July 25, 1993, the power to revoke, amend, or modify the instrument creating that power.  See RCWA 11.95.140(2).[10]

In order for RCWA 11.95.100 to apply to decedent's power to withdraw, Carl A. Christensen, decedent's spouse who created decedent's power to withdraw pursuant to the will that he executed on August 26, 1980, was required to have on July 25, 1993, the power to revoke, amend, or modify that will.  See RCWA 11.95.140(2).  Carl A. Christensen died on February 25, 1982. Obviously, he did not have, and could not have had, on July 25, 1993, the power to revoke, amend, or modify his will creating decedent's power to withdraw.

On the record presented, we find that RCWA 11.95.100 did not apply to decedent's power to withdraw.  The estate acknowledges that if the Court were to find that RCWA 11.95.100 did not apply to decedent's power to withdraw, that power would constitute a general power of appointment as defined in section 2041(b)(1). Consequently, we sustain respondent's determination in the notice with respect to that power.

---

[10]RCWA 11.95.140(2) contains two exceptions specified in RCWA 11.95.140(2)(a) and (b) that do not apply in the instant case.

We have considered all of the contentions and arguments of the estate that are not discussed herein, and we find them to be without merit and/or irrelevant.

To reflect the foregoing,

<u>Decision will be entered for</u>

<u>respondent</u>.